UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------X
DEBORAH LAUFER,

                                           Case No.: 3:19-cv-01581-BKS-ML

               Plaintiff,

v.


JEGG REALTY NORWICH, LLC,

               Defendant.
------------------------------------------X


PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF STANDING


Peter Sverd, Esq. of Counsel to
Thomas B. Bacon, PA
225 Broadway, Suite 613
New York, New York 10007
(646) 751-8743
psverd@sverdlawfirm.com

**Table of Contents**

I.      Procedural Background ……………………………...………………………………1-2

II.     Defendant's Arguments Are Without Merit……………...……………………………2-10

III.    Spokeo Does Not Diminish Plaintiff's Rights………………………….………………10

A.      Havens Realty Remains On Point And Applicable…………………………..………10-12

B.      The "Injury" At Issue In Spokeo Starkly Contrasts With The Plaintiff's Injury…….13-15

IV.     Defendant's Improper Argument On The Merits…………………………………..……15

V.      Conclusion……………………………………………………………………………16

**Table of Authorities**

*Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202 (S.D.N.Y. 2019)……………….…3

*Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, 118 S. Ct. 1777,

141 L. Ed. 2d 10 (1998)…………………………………………………………………………11

*Gonzalez v. Bahar Corp.*, 2019 U.S. Dist. Lexis 58567, *6 (E.D.N.Y. 2019)…………..………3-4

*Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649 (4th Cir. 2019)…………………4,5, 7

*Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)…………..…………4

*Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 155 (2d Cir. 2013)……..…………….3

*Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71–72 (2d Cir. 2011)…………….…………3

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)………………………………5-7, 8, 11

*Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 (S.D.N.Y. 2019)……….15

*Kennedy v. Omega Gas,* 9:17-cv-80103-RLR, DE 60 (S.D. Fla. 8/30/17)…………………....10

*Kreisler v. Second Ave Diner Corp.*, 731 F.3d 184 (2nd Cir. 2013)……………………….....3

*Laufer v. Laxmi & Sons, LLC*, 1:19-cv-1501-BKS-ML, DE 15 (N.D. N.Y. 5/6/20)……………1,4

*Lujan v. Defenders of Wildlife*, 504 U.S. 538 (1992)…………………………………...……4

*Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)………..…….4

*Parks v. Shipwreck Motel, Inc.*, 2:20-cv-227-SPC-NPM, DE 11(M.D. Fla. 5/18/20)…………...10

*Payne v. Boston Market Corp.*, 5:12-cv-354, DE 16 (E.D.N.C. 3/12/13)………………….…..10

*PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001)………………………………………………..5,8

*Poschman v. Coral Reef Of Key Biscayne Developers, Inc.*,

2018 U.S. Dist. Lexis 87457 (S.D. Fla. 5/22/18)………………………………………………...15

*Ragin v. Harry Maclowe Real Estate Co.*, 6 F.3d 898 (2nd Cir. 1993)………………..………7

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) …………………………………………...10, 11

## Table of Statutes

42 U. S. C. § 3604(d)………………………………………………………..………….6, 7

42 U. S. C. § 3612(a)…………………………………………………………..………..6

42 U.S.C. § 12182(a)…………………………………………………………………...5

42 U.S.C. § 12182(b)(2)(A)…………………………………………..……………..12

42 U.S.C. §12182(b)(2)(A)(i)………………………………………………………..8

42 U.S.C. § 12182(b)(2)(A)(ii)………………………………………………………9, 12

Plaintiff, by and through undersigned counsel, hereby files this Reply To Defendant's Memorandum Of Law Challenging Plaintiff's Standing.

## I.      Procedural Background

The instant matter does not involve any pending motion. Rather, in *Laufer v. Laxmi & Sons, LLC*, 1:19-cv-1501-BKS-ML, DE 15 (N.D. N.Y. 5/6/20), this Court issued an Order requiring that Plaintiff file a memorandum in all pending cases explaining her standing to pursue these actions involving hotel discrimination with respect to their online reservations services. On May 28, 2020, Plaintiff filed her Memorandum regarding standing. DE 17.  The Court's Order did not require Plaintiff to file an additional affidavit in this case and, therefore, none was filed. Rather, Plaintiff's Memorandum was based on the sufficiency of her allegations and the law as it applies to website discrimination and standing.

Defendant did not file a motion of any kind. Rather, it filed a Memorandum Of Law Challenging Plaintiff's Standing. The arguments raised by Defendant's Brief are limited to a single premise: namely, that the injury can only occur at the physical property and that encountering website discrimination is not an injury. In short, Defendant fails to rebut the slew of authorities submitted by Plaintiff in her Memorandum explaining why she has standing.

Moreover, in her Memorandum, Plaintiff was only required to brief the Court with respect to whether the allegations set forth in the complaint established a cause of action. In other words, whether her visits to a discriminatory online reservations service and intent to return to the same are sufficient. As the Defendant has filed an opposition brief, and out of an abundance of caution, Plaintiff hereby accompanies this brief with her affidavit, which better explains her standing.

1

As set forth in her Affidavit, Exhibit A attached hereto, Laufer resided for many years in New York, has family and friends here, and frequently returns to the area and travels all over the State. When she visits, she stays in hotels. More significantly, Laufer has a system of tracking the hotels she has sued and ensuring that she returns to their online reservations service in each case. *Id.*, para. 8. In this regard, her list sets forth every hotel she has sued, with columns indicating the dates she visited the online reservations services. By this system, she revisits the online reservations services for each and every hotel shortly after the complaint is filed. Once it is established (either by court order or by settlement agreement) when the hotel's service is required to become compliant, she marks that date and revisits at that time. *Id.*, para. 8. Pursuant to this system, Plaintiff visited Defendant's discriminatory online reservations service five times prior to the filing of the instant action (November 19, 23, 24, 25 and 27, 2019) and already visited it afterward. This included a revisit shortly after the complaint was filed, on January 16, 2020. *Id.* Plaintiff recently again went through her entire list of hotels she had sued and revisited the online reservations services for each. This recent recheck of all hotels included the Defendant's hotel ORS, which Plaintiff again revisited on May 15, 2020. *Id.* Thus, pursuant to her system, Plaintiff has already revisited the hotel's discriminatory online reservations service twice since she filed the case.

Moreover, Plaintiff plans to travel to New York once the Covid crisis subsides. *Id.*, para. 5. She intends to visit her family and friends and also to travel throughout the state and needs to stay in hotels during her travels. *Id.* She needs compliant hotel online reservations services so that she has the information she requires to make an informed decision and reserve a room at a hotel that suits her needs. *Id.*

## II.     Defendant's Arguments Are Without Merit

2

Defendant's references to physical property cases are without merit. *Kreisler v. Second Ave Diner Corp.*, 731 F.3d 184 (2nd Cir. 2013); *Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 155 (2d Cir. 2013); and *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71–72 (2d Cir. 2011); are inapposite. In all three cases, the injunctive relief sought by the plaintiff involved remediation of physical conditions located at the physical properties. In all three cases, the plaintiff was only injured when he or she personally visited the physical property and encountered discriminatory conditions located there. In all three cases, the plaintiffs could only again encounter discrimination by traveling back to the subject properties in the future.

By contrast, in cases involving website discrimination, the injury occurs in the plaintiff's own home when they review the hotel's discriminatory online reservations service. It is for this reason that at least one court in the Southern District Of New York rejected the argument that the cases cited above are applicable to cases involving website discrimination. In *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202, *30 (S.D.N.Y. 2019), one court stated:

> Defendant's argument, built around citations to cases involving ADA claims relating to access to physical locations, misses the mark. Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended to return to the Website, and the Court has found that this requirement is met.

In *Gonzalez v. Bahar Corp.*, 2019 U.S. Dist. Lexis 58567, *6 (E.D.N.Y. 2019), one court in the Eastern District of New York cited the *Harty v. Simon Property* case and stated that the issue is the plaintiff's intent to return to the website, rather than the physical property. The court contrasted the website case at issue against physical property cases, noting: "Here, [plaintiff's] desire to return to the website is especially plausible because this action can be completed by a

few keystrokes, without cost, and at any time. Unlike the plaintiffs in *Lujan v. Defenders of Wildlife*, 504 U.S. 538 (1992)], [plaintiff] is not alleging an intent to return to a physical location, let alone a distant one.  2019 U.S. Dist. Lexis 58567, *7-8.

Defendant and the *Laxmi* Court make reference to *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649 (4th Cir. 2019)[1]. However, the Griffin opinion is flawed for multiple reasons. In *Griffin,* the court held that a disabled plaintiff has a cause of action for commercial website discrimination only if that website prevented him from access to the defendant's service. *Id*., at 653. What the court completely overlooked was the fact that the website was itself a "service" of the place of public accommodation. See *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp*., 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same).   42 U.S.C. Section 12182(a) clearly spells out a complete cause of action as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation..." Because the websites are a "service", all that is required is that a disabled person be deprived of full and equal enjoyment of this "service".[2]  Once that occurs, all the elements are satisfied to establish a cause of action. Conspicuously absent from the Regulation or the Statute is any requirement that the

---

[1]*Griffin* involved the application of the ADA to commercial website compatibility with screen reader software, an area to which no Department of Justice regulation has been promulgated and, therefore, courts have less guidance in applying the law. By contrast, the instant action involves a duly promulgated regulation which clearly imposes liability and responsibilities with no requirement of any physical nexus between the discriminatory website and physical hotel.

[2]An online reservations service may also be characterized as a privilege or advantage, also referenced in Subsection 12182(a).

disabled person must additionally intend to be a client or customer, bona fide patron or, in this case, book a room and stay at the hotel as a requirement for a cause of action.

The *Griffin* court ignored the fact that when a disabled person encounters a discriminatory website, he already is deprived "in the full and equal enjoyment of [a service] ... of [the] place of public accommodation". In short, the *Griffin* court misconstrued the locus of injury as necessary being AT the physical facility. The court thus rewrote 42 U.S.C. Section 12182(a) to say that a disabled person only has a cause of action if they are deprived "full and equal enjoyment of a service **OF** a place of public accommodation which, in turn, further deprives them of full and equal enjoyment of an additional good or service **AT** the place of public accommodation." This clearly and improperly rewrites the statute by adding and compounding requirements.

The *Griffin* opinion is from the Fourth Circuit and, therefore, not binding precedent.  By contrast, this Court is bound to follow the three cases on point issued by the Supreme Court and Second Circuit, with which *Griffin* is in conflict.

First, the *Griffin* opinion runs afoul of *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), which applied the rules of statutory construction in holding that the disabled plaintiff does not need to be a client or customer of the defendant.

Second, the *Griffin* opinion also is in conflict with *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which held that black testers had standing to sue over discriminatory information even though they did not intend to rent an apartment. For example, the *Griffin* court stated: "Inability to obtain information is sufficiently concrete to constitute injury in fact only when the information has some relevance to the litigant." This conclusion is completely incorrect in light of *Havens Realty*, which stands for the opposite proposition: specifically, that intent to go

5

to the property (or rent an apartment there) was entirely unnecessary and that encountering the discrimination defined by the plain words of the statute were sufficient. On this point, the *Havens Realty* Court opined as follows:

> In the present context, "testers" are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices. Section 804(d) states that it is unlawful for an individual or firm covered by the Act "[to] represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available," 42 U. S. C. § 3604(d) (emphasis added), a prohibition made enforceable through the creation of an explicit cause of action in § 812(a) of the Act, 42 U. S. C. § 3612(a). Congress has thus conferred on all "persons" a legal right to truthful information about available housing.[3]

*Havens Realty*, 455 U.S. at 373. The Court went on to reason:

> This congressional intention cannot be overlooked in determining whether testers have standing to sue. As we have previously recognized, "actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, [422 U.S. 490] at 500 [(1975)], quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d). See *Pierson v. Ray*, 386 U.S. 547, 558  (1967); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) (per curiam). Whereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, 42 U. S. C. § 3604(a), required that there be a "bona

---

[3]In *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1332-33 (11th Cir. 2013), the Eleventh Circuit followed this analysis in holding that testers have standing for Title III ADA cases because the statute's substantially similar language that "no individual shall.." and "any person discriminated against..." afforded tester standing.

fide offer" to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d).
*Havens Realty*, 455 U.S. at 374.

Third, the *Griffin* opinion is in conflict with the holding of *Ragin v. Harry Maclowe Real Estate Co.*, 6 F.3d 898 (2nd Cir. 1993). There, Second Circuit held that individuals had standing to sue under the Fair Housing Act for the defendant's placement of display advertising for residential apartments in the newspaper because all the models portrayed in the ad were white. The Court rejected the defendant's argument, reasoning as follows:

> The defendants argue in their cross appeal that the individual plaintiffs have suffered no injury because they were not in the market for housing when they saw these ads but instead actively were combing the newspapers looking for these ads in order to bring a section 804(c) action. For the purpose of our discussion, we will assume that the plaintiffs were not actively looking for an apartment when they viewed the defendants' ads.
> The Supreme Court addressed the issue of private party standing to sue in FHA actions in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 71 L. Ed. 2d 214, 102 S. Ct. 1114 (1982). In *Havens Realty*, the defendants argued that "testers"--individuals who, without the intent to rent an apartment, pose as renters for the purpose of collecting evidence of unlawful steering away of prospective minority purchasers by real estate agents--lacked standing to sue for violations of section 804(d) of the Act. Section 804(d) makes it unlawful for a person "to represent to any person because of race . . . that any dwelling is not available for . . . rental when such dwelling is in fact so available." 42 U.S.C. § 3604(d) (emphasis added). The Court rejected the defendants' argument and held that a tester who "may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home," had standing to sue by virtue of his allegation that his statutorily created right to truthful information about the availability of housing was violated. *Havens Realty,* 455 U.S. at 374. The Court based its conclusion on the long-held principle that "the actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" Id. at 373 (quoting *Warth v. Seldin*, 422 U.S. 490, 500, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975)); see also *Lujan*, 112 S. Ct. at 2145.
> Here, Judge Sweet found that "a plaintiff who proves that she read the challenged advertisements and that the advertisements would indicate

a racial preference to the ordinary reader 'has suffered injury in precisely the form the [FHA] was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions.'" 801 F. Supp. at 1229 (quoting *Havens Realty*, 455 U.S. at 373-74). We agree. There is no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by the Ragins and the Cuylers, who were confronted by advertisements indicating a preference based on race. See *Saunders v. General Servs. Corp*., 659 F. Supp. 1042, 1053 (E.D. Va. 1987).   Given the private attorney general provision in section 813(a) of the Act and the Supreme Court's holding in *Havens Realty*, the district court was constrained to find that the individual plaintiffs had standing to bring this action in federal court.

Ragin, 6 F.3d at 904.

The cases cited above relied heavily on the rules of statutory construction and noted that restrictive language contained in other statutes or subsections was absent from the subsections governing their respective cases and, therefore, such restrictive language could not be applied.

Thus, it is highly significant that the physical nexus requirement does indeed exist in a different subsection. 42 U.S.C. Section 12182(b)(2)(A)(i) states that the term "discrimination" includes: "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities **from** fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." In this Subsection alone, it is not enough for a disabled person to merely encounter a discriminatory screening process. Rather, that discriminatory screening process is not actionable unless and until it prevents them "**from** fully and equally enjoying any goods, services, etc...."

Under *Havens Realty* and *PGA Tours*, because this additional restriction is set forth in 42 U.S.C. Section 12182(b)(2)(A)(i), but is completely absent from the Regulation or the Subsections that govern hotel online reservation discrimination, the rules of statutory construction require that it cannot be imposed here.

8

The Defendant in the instant case entirely misconstrues the nature of the injury. For example, at p. 3 of its brief, the Defendant argues: "The prefatory language of the regulation at issue clearly evidences that a putative plaintiff must have made an attempt, or have some intent, to use the **goods and services being discussed on the website at issue**." (Emphasis added.) Defendant's assertion in this regard is absurd. Clearly, no reading of the "prefatory language" or any other relevant part of the Regulation or statutory subsections that govern online reservations services contain any such requirement or support Defendant's illogical interpretation. Again, Defendant would have this Court overlook the fact that the online reservation service is the "service" at issue and website discrimination4 is deprivation of full and equal enjoyment of a "service". Plaintiff's cause of action is thus complete and nothing more is required.

Thus, the injury-in-fact is the Plaintiff's encounter with the Defendant's discriminatory online reservations service and the issue for purposes of injunctive relief is the likelihood that Plaintiff would return to the website after the complaint was filed. In this case, and pursuant to her system, Plaintiff visited the Defendant's discriminatory online reservations service five times prior to filing this case (November 19, 23, 24, 25, and 27, 2019) and already visited it twice afterward. Her first post-complaint revisit was on January 16, 2020.  Laufer Affid., para. 8. Thus, she was already true to her word as of January this year when she averred in her Complaint that she intended to revisit the websites in the near future. Pursuant to her system, she also rechecked the websites of each and every hotel on her list, thus revisiting the online service for this hotel May 15, 2020. Thus, pursuant to her system, Plaintiff has already revisited the hotel's

---

4As explained in Plaintiff's Memorandum, the DOJ promulgated the Regulation pursuant to 42 U.S.C. Section 12182(b)(2)(A)(ii). Thus, a hotel's online reservations service's failure to comply with this Regulation constitutes a violation of this Subsection. This, in turn and by virtue

discriminatory online reservations service twice since she filed the case. *In Parks v. Shipwreck Motel, Inc*., 2:20-cv-227-SPC-NPM, DE 11, p. 6 (M.D. Fla. 5/18/20), one court held that such a system satisfies intent to return requirement. Moreover, at least two courts have held that a plaintiff's post-complaint return establishes standing. See *Payne v. Boston Market Corp*., 5:12-cv-354, DE 16 (E.D.N.C. 3/12/13); *Kennedy v. Omega Gas,* 9:17-cv-80103-RLR, DE 60, pp. 6-7 (S.D. Fla. 8/30/17).

Lastly, Plaintiff at all times material hereto does indeed intend to visit New York to visit her family, travel around the state and stay in hotels. Laufer Affid. Para. 5. In making such plans, she needs to be able to review compliant hotel online reservations services so that she can make meaningful choices. *Id.* Her travel plans are currently on hold pending the passing of the Covid crisis. *Id*. Thus, the Defendant's failure to comply with the law does in fact impede Plaintiff's ability to make a meaningful choice in planning her trip to New York and stay in hotels. However, Plaintiff submits that this information is entirely unnecessary with respect to her right to pursue this cause of action for online reservations discrimination because no intent is necessary.

## III.   *Spokeo* Does Not Diminish Plaintiff's Rights

The Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) does not negate Plaintiff's right to sue, even in the absence of any intent to book a room at a hotel.

### A.   *Havens Realty* Remains On Point And Applicable

First. the *Spokeo* Court refrained from actually holding that the plaintiff therein did not suffer actionable injury, stating: "We take no position as to whether the Ninth Circuit's ultimate

of Subsection (b)(2)(A), constitutes "discrimination" within the meaning of the general prohibition set forth at Subsection 12182(a).

10

conclusion — that Robins adequately alleged an injury in fact — was correct." *Spokeo*, 136 S.Ct.

at 1540. Critically, the *Spokeo* Court did not overturn or narrow its prior holding in *Havens*

*Realty*. In this regard, the *Spokeo* Court stated:

> Just as the common law permitted suit in such instances, the
> violation of a procedural right granted by statute can be sufficient
> in some circumstances to constitute injury in fact. In other words, a
> plaintiff in such a case need not allege any additional harm beyond
> the one Congress has identified. See *Federal Election Comm'n v.*
> *Akins*, 524 U. S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10
> (1998) (confirming that a group of voters' "inability to obtain
> information" that Congress had decided to make public is a
> sufficient injury in fact to satisfy Article III); *Public Citizen v.*
> *Department of Justice*, 491 U. S. 440, 449, 109 S. Ct. 2558, 105 L.
> Ed. 2d 377 (1989) (holding that two advocacy organizations'
> failure to obtain information subject to disclosure under the
> Federal Advisory Committee Act "constitutes a sufficiently
> distinct injury to provide standing to sue").
> *Spokeo,* 136 S.Ct. At 1549-50.

In the *Akins* decision referenced by *Spokeo*, the Supreme Court in turn referenced *Havens*

*Realty* as follows:

> Indeed, this Court has previously held that a plaintiff suffers an
> "injury in fact" when the plaintiff fails to obtain information which
> must be publically disclosed pursuant to a statute. *Public Citizen v.*
> *Department of Justice*, 491 U.S. 440, 449, 105 L. Ed. 2d 377, 109
> S. Ct. 2558 (1989) (failure to obtain information subject to
> disclosure under Federal Advisory Committee Act "constitutes a
> sufficiently distinct injury to provide standing to sue"). See also
> *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374, 71 L. Ed.
> 2d 214, 102 S. Ct. 1114 (1982) (deprivation of information about
> housing availability constitutes "specific injury" permitting
> standing).
> *Akins*, 524 U.S. at 21.

Thus, through *Spokeo* and *Akins*, the Supreme Court recognized that *Havens Realty*

remains valid law, being neither overturned nor narrowed.  Plaintiff submits that *Havens Realty*,

and the Second Circuit case which followed *Havens Realty*, *Ragin,* are directly on point.  As in

the statute in *Havens Realty*, the ADA states that "No individual shall be discriminated against...". 42 U.S.C. Section 12182(a). Moreover, the ADA further provides that "any person who is being subjected to discrimination on the basis of disability..." has the right to sue. 42 U.S.C. Section 12188(a).5   In short, the statutory rights and remedies under the ADA are substantially similar to those at issue in *Havens Realty*. Like the FHA in *Havens Realty*, Congress created a statutory right to sue and created an injury, which includes a disabled person's encounter with discriminatory information. No gaps are left.  A discriminatory online reservations system constitutes an injury in two ways. First, it is failure to provide full and equal enjoyment of a service, proscribed by Subsection 12182(a). Second, Subsection 12182(b)(2)(A) states that this  constitutes "discrimination", all of which are actionable for "any person" by virtue of Subsection 12188(a).

Nor does the *Spokeo* opinion diminish, reverse or narrow the Second Circuit's holding in *Ragin,* which followed *Havens Realty*. Thus, both the *Havens Realty* and *Ragin* opinions stand for the proposition that the receipt of discriminatory information constitutes actionable injury even if the intended recipient had no intention of using that information for any additional purpose. The conveyance of discriminatory information was, by itself, actionable.

The *Spokeo* Court expressly recognized its own prior opinions which accorded the right to sue over strictly informational violations. *Spokeo* specifically recognized the continuing validity of *Akins*, which in turn specifically recognized *Havens Realty*. For this reason, the holding of *Havens Realty* remains undiminished.

---

5As explained previously, failure to comply with the regulation governing online hotel reservations services constitutes "discrimination", pursuant to 42 U.S.C. Section 12182(b)(2)(A)(ii).

B.    The "Injury" At Issue In *Spokeo* Starkly Contrasts With The Plaintiff's
      Injury

The injury discussed in *Spokeo* and the Plaintiff's injury at issue herein stand in stark contrast. Whereas the regulation and statutory provision in the ADA draw a clear line between a disabled person's encounter with a discriminatory online reservations service and his injury and right to sue, no such line was established for the *Spokeo* plaintiff.

For injury under the applicable provisions of the ADA, the Regulation and applicable subsections completely spell out a cause of action. Moreover, the question as to whether any additional requirements can be judicially imposed are answered in the negative by the fact that such "client or customer" language or physical nexus requirement language is contained elsewhere, but omitted here.

Thus, a disabled plaintiff's rights, the definition of injury, right to sue, and what requirements must be excluded from applicable provisions, are unambiguously clear in the ADA.

By contrast, the injury and statutory rights discussed in *Spokeo* were vague.

First, unlike the ADA or the *Havens Realty* case,  the *Spokeo* case did not involve discrimination. Rather it involved the Fair Credit Reporting Act. In the ADA, the statute is intended to prohibit the conveyance of a discriminatory online reservations service to a disabled person. There, the intended recipients of the information and the members of the protected class are the same. As in *Havens Realty* and *Ragin*, the injury naturally occurs when the discriminatory information is received by the plaintiff (the member of the protected class).

In the FCRA, by contrast, the intended recipients of the information are third party creditors and prospective employers, an entirely different class of persons from those the statute was designed to protect.  In other words, there is an additional and indirect causal link required

for the member of the protected class to suffer harm.    The FCRA is essentially a defamation statute. For defamation to occur, a third party must receive the information to the detriment of a member of the protected class. In *Spokeo*, there was no indication that any third party creditors received the false information at issue. Only that, the plaintiff "learned of these inaccuracies" and thereupon filed suit. *Spokeo*, 136 S.Ct. at 1544.

Most significantly, the prerequisites for a civil suit differ significantly between *Spokeo* and the ADA. Whereas the ADA's 12188(a) provides a remedy to "any person who is being subjected to discrimination...", the *Spokeo* Court described the FCRA's statutory enforcement provision as follows: "The Act also provides that "[a]ny person who willfully fails to comply with any requirement  [of the Act] with respect to any [individual is liable to that [individual]" for, among other things, either "actual damages" or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages. *Spokeo*, 136 S.Ct. at 1545.  There is nothing in the *Spokeo* opinion indicating whether or not the plaintiff satisfied this provision, thus entitling him to sue.

To summarize, the ADA's actionable injury is clear. A disabled person who encounters a discriminatory online reservation is "any person subjected to discrimination" and has the express statutory right to sue. The injury occurs when the disabled person reviews the discriminatory information. Indeed, the sole purpose of the Regulation is to provide the required information to a disabled person.

By contrast, the FCRA protects one class (the consumer) regarding incorrect information provided to a different class (creditors, employers or romantic interests).  The plaintiff/consumer's review of his own inaccurate information does not necessarily constitute injury, particularly when the statute provides relief for "actual" or "statutory" damages.

14

On the one hand, the Plaintiff's rights under the ADA's are substantially identical to those discussed in Havens Realty and Ragin. On the other hand, the statutory rights at issue herein differ substantially from that discussed in Spokeo. Therefore, Plaintiff submits that *Havens Realty* governs.

**IV.    Defendant's Improper Argument On The Merits**

In a footnote, the Defendant also argues that Plaintiff should have overcome the deficiencies in Defendant's online reservations service by calling the hotel. This argument has been rejected because requiring a disabled person to call a hotel fails the Regulation's requirement that the rooms be identified and bookable in the same manner as the other rooms and that the required information be contained on the website itself without the disabled person having to undertake extra efforts. See *Poschman v. Coral Reef Of Key Biscayne Developers, Inc*., 2018 U.S. Dist. Lexis 87457 (S.D. Fla. 5/22/18); *Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 **9-10 (S.D.N.Y. 2019)(ability to telephone or email hotel is not "same manner" and therefore not a viable defense).

Moreover, Defendant's reference in this regard is not relevant to the issue of standing and is beyond the scope of the Court's Order re standing. Defendant is in default and has been so since February 24, 2020, DE 8. Plaintiff moved for Default Judgment on March 24, 2020. DE 11. Although Defendant's counsel moved for admission Pro Hac Vice on April 20, 2020, and Defendant has been on notice now for more than two months of the default, Defendant has not challenged the default or filed any motion to set it aside. Thus, any argument on the merits made by Defendant is entirely improper.

15

**V.**     **Conclusion**

For the foregoing reasons, Defendant's arguments are entirely lacking in merit. The injury occurred when Plaintiff reviewed Defendant's discriminatory online reservations service in her own home and the imposition of any additional requirement that she intend to book a room at the hotel, or otherwise visit the hotel, is entirely improper in light of precedent from the Supreme Court and Second Circuit as well as the ample caselaw cited in Plaintiff's Memorandum.  Quite simply, a court cannot add a requirement to a clear statute. Nor can a court take restrictive language from one subsection of a statute and insert it into another where Congress omitted it.

Dated: New York, New York
        July 1, 2020

*Peter Sverd*
Peter Sverd, Esq.

16

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

DEBORAH LAUFER,
      Plaintiff,

v.                                    Case No: 3:19-cv-01581-BKS-ML

JEGG REALTY NORWICH, LLC,
      Defendant.

## STATEMENT MADE PURSUANT TO 28 U.S.C. SECTION 1746

1.      My name is Deborah Laufer. I am currently a resident of Pasco County, Florida.   I am unable to engage in the major life activity of walking more than a few steps without assistive devices. Instead, I am bound to ambulate in a wheelchair or with a cane or other support and have limited use of my hands. I am unable to tightly grasp, pinch and twist of the wrist to operate. I am also vision impaired. When ambulating beyond the comfort of my own home, I must primarily rely on a wheelchair. I require accessible handicap parking spaces located closet to the entrances of a facility. The handicap and access aisles must be of sufficient width so that I can embark and disembark into a vehicle. Routes connecting the handicap spaces and all features, goods and services of a facility must be level, properly sloped, sufficiently wide and without cracks, holes or other hazards that can pose a danger of tipping, catching wheels or falling. These areas must be free of obstructions or unsecured carpeting that make passage either more difficult or impossible. Amenities must be sufficiently lowered so that I can reach them. I

1

have difficulty operating door knobs, sink faucets, or other operating mechanisms that tight grasping, twisting of the wrist or pinching. I am hesitant to use sinks that have unwrapped pipes, as such pose a danger of scraping or burning my legs. Sinks must be at the proper height so that I can put my legs underneath to wash my hands. I require grab bars both behind and beside a commode so that I can safely transfer and I have difficulty reaching the flush control if it is on the wrong side. I have difficulty getting through doorways if they lack the proper clearance. To use a pool, I require a lift or other accessible means. When sleeping in a guest room, I need a compliant tub or shower with required grab bars.

2.    When looking at a hotel online reservation service, I need information so that I can ascertain whether or not the hotel and its guest rooms are accessible to me. This includes information whether the conditions referenced above are compliant.

3.    In the past, I have observed that the vast majority of hotel online reservations services do not allow for booking of accessible rooms or provide the information I need to make an informed choice. I have also booked a room at hotels whose websites claim they are "accessible", only to find that this claim is untrue. Therefore, I cannot make plans to travel if I intend to stay in an accessible room at an accessible hotel. The failure of so many hotels to comply with the law in this regard deter me from making travel plans. Therefore, I am an advocate on behalf of both myself and other similarly situated disabled persons and consider myself a tester.  As a tester, I visit hotel online reservations services to ascertain whether they are in compliance with the Americans With Disabilities Act. In the event that

2

they are not, I request that a law suit be filed to bring the website into compliance with the ADA so that I and other disabled persons can use it.

5. I used to live in New York, have family there, and return constantly. I frequently stay in a a hotel when I go up. I have also traveled throughout the state. I plan to return to New York, travel around the entire state, and stay in hotels as soon as the Covid crisis is over. My plans to return to the area this summer are presently on hold because of this crisis. When I can return, I need to review the online reservations services of New York hotels so that I can make meaningful choices and plan my trip.

6. Rooms for the Chenango Inn And Suites, 75 N. Broad St., Norwich NY,  can be booked through an online reservations service.  I visited this online reservations service on November  19, 23, 24, 25, and 27, 2019 and January 16,  2020. I also recently went through my entire list of hotels and revisited the online reservations services for each. Pursuant to this last round, I revisited the online reservations service for Defendant's hotel on May 15, 2020. I visited the online reservation service for the Defendant's hotel for the purpose of  reviewing and assessing the accessible features at the hotel and ascertain whether the websites contain the information required by 28 C.F.R. Section 36.302(e) and  adequately informs me as to whether the hotel meets my accessibility needs. I was in my own home in Pasco County when I visited these websites. However, I was unable to do so because Defendant failed to comply with the requirements set forth in 28 C.F.R. Section 36.302(e). As a result, I was deprived the same services available to the

3

general public. The websites do not identify any accessible rooms, provide for

booking of accessible rooms or contain any information as to whether any rooms

or features at the hotel are accessible.

7.    When I encountered the above conditions, I suffered humiliation and frustration at

being treated like a second class citizen, being denied equal access and benefits to

the goods, facilities, accommodations and services.  I am deterred from returning

to the websites because I understand that it would be a futile gesture to do so

unless I am willing to suffer further discrimination. I am aware that defendant

segregates against me and other disabled persons by offering them one service: me

a lesser service.. I am aware that I am being deprived the equality of opportunity

afforded to non-disabled persons to utilize the online reservation service free of

discrimination. I am also aware that my ability to travel free of discrimination and

with equal access to information offered to the general public is diminished.

8.    I have a system to ensure that I revisit the online reservations services for every

hotel I sue. In this regard, I maintain a list of each hotel I have sued. I constantly

go through this list and add to it. With respect to each hotel I sue, shortly after the

complaint is filed, I revisit the hotel's online reservations service. Once a case is

settled, I mark the date on my list when the defendant has agreed to fix its

websites or when it is otherwise required to become compliant. When that date

arrives, I revisit it again and record my visits. Thus, I revisit each hotel's online

reservations service multiple times times after a lawsuit is filed. In this case and

pursuant to my system, I visited the hotel's online reservations service five times

4

before the case was filed (November 19, 23, 24, 25, and 27, 2019) and twice

afterwards (on January 16, 2020 and again on May 15, 2020, when I revisited the

online services for all hotels on my entire list over the course of several days). I

plan to again revisit the hotel's online reservations service as soon as it is required

to become compliant, either by Court order or by settlement agreement.

Pursuant to 28 U.S.C. Section 1746, I declare, certify, verify, and state, under penalty of perjury

that the foregoing is true and correct.

Date: 6.30.20                                  _____
                                                        DEBORAH LAUFER

5